BLUMBERG ASSOCIATES WORLDWIDE, INC.
*v.* BROWN AND BROWN OF CONNECTICUT,
INC., ET AL.
(AC 32539)

Bishop, Robinson and Espinosa, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued May 23—officially released November 15, 2011

*Daniel J. Klau*, with whom was *Harold James Pick-erstein*, for the appellant (plaintiff).

*John M. Tanski*, with whom, on the brief, were *William M. Rubenstein, Denise V. Zamore* and *Mark D. Alexander*, for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, Blumberg Associates Worldwide, Inc., appeals from the summary judgment rendered by the trial court in favor of the defendants, Brown & Brown of Connecticut, Inc. (Brown & Brown), and Brown & Brown, Inc. (parent company). On appeal, the plaintiff claims that (1) summary judgment was improper because there are genuine issues of material fact as to (a) whether certain conduct of Brown & Brown constituted a prevention of performance and (b) whether the defendants waived their right to enforce a provision in the parties' contract that required any waiver of a provision of the contract to be in writing; (2) the court interpreted the complaint too narrowly

and, therefore, improperly declined to consider whether an issue of material fact existed as to whether Brown & Brown had breached the contract in bad faith; and (3) the court abused its discretion in refusing to allow the plaintiff to amend its complaint after the defendants' motion for summary judgment had been granted. We affirm the judgment of the trial court.

Viewed in the light most favorable to the plaintiff; see, e.g., *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009); the pleadings, affidavits and other proof submitted reveal the following facts and procedural history. On July 19, 2006, the plaintiff and the defendants entered into a written contract entitled the "Subway Program Agreement." According to the contract, the plaintiff made introductions and facilitated communications that were instrumental in leading to Brown & Brown being designated as a gold standard insurance agent by Doctor's Associates, Inc. As a result of that designation, Brown & Brown was able to offer certain insurance services to Subway restaurant franchises.[1] As consideration for the plaintiff's facilitation services, Brown & Brown agreed to pay to the plaintiff a percentage of the commissions and fees that it received from selling insurance services to Subway restaurant franchisees.

By letter dated February 26, 2008, the defendants notified the plaintiff that they were terminating the contract. The letter stated that Brown & Brown was entitled to terminate the contract for cause pursuant to § 4 (b) (i) (B) of the contract upon "the loss or suspension of [the plaintiff's] resident insurance license in its state of domicile, if such loss or suspension is not cured within ninety (90) days of such loss or suspension . . . ." The letter went on to state that cause existed to terminate

---

[1] According to the contract, Subway restaurant franchisees are limited to purchasing certain insurance services from gold standard providers only.

the contract pursuant to § 4 (b) (i) (B) because the plaintiff's license in the state of Connecticut, its domicile, had been "canceled on January 31, 2006," and the "loss . . . [had] not [been] cured within 90 days of that event."[2]

The plaintiff commenced the present action by way of a five count complaint filed on October 10, 2008. In the complaint, the plaintiff alleged: (1) breach of contract against Brown & Brown in count one; (2) unjust enrichment against Brown & Brown in count two; (3) quantum meruit against Brown & Brown in count three; (4) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., against Brown & Brown in count four; and (5) breach of guaranty against the parent company in count five. On January 22, 2009, the defendants filed a motion to strike all five counts of the complaint, which the court granted as to count four, but denied as to the remaining counts.[3]

On January 29, 2010, the defendants filed a motion for summary judgment with respect to counts one, two, three and five of the plaintiff's complaint. The court issued a memorandum of decision granting the motion. After the court issued its decision, the plaintiff filed a motion to open the judgment in order to amend its complaint to include a claim for breach of the implied covenant of good faith and fair dealing (implied covenant), which the court denied.[4] This appeal followed. Additional facts will be set forth as necessary.

---

[2] Upon receipt of the letter, the plaintiff took the necessary steps to reinstate its license, and the license was reinstated on May 15, 2008.

[3] When the plaintiff did not replead, the court rendered judgment in favor of the defendants on count four of the complaint.

[4] Along with the motion to open, the plaintiff also filed a motion to amend the complaint and a motion to reargue the granting of the defendants' motion for summary judgment in light of the proposed amendment to the complaint, both of which the court denied. As the plaintiff concedes in its brief to this court, all three motions are "interlocking components of a single motion with a single objective: getting the trial court to consider the merits of [the plaintiff's] argument that the [d]efendants exercised their discretion to

## I

The plaintiff first claims that summary judgment was improper because there are genuine issues of material fact as to (1) whether certain conduct of Brown & Brown constituted a prevention of performance that excused the plaintiff's failure to maintain its insurance license and (2) whether the defendants waived their right to enforce a provision of the contract that required any waiver of a contract provision to be in writing.

The applicable standard of review is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the [defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 312, 948 A.2d 318 (2008).

### A

The plaintiff first contends that there is a genuine issue of material fact as to whether certain conduct of Brown & Brown constituted a prevention of performance. We disagree and conclude that the court properly determined that the plaintiff's reliance on the

---

terminate the [contract] in bad faith." Therefore, for purposes of this appeal, we consider the denial of all three motions.

doctrine of prevention as a defense to summary judgment fails as a matter of law, albeit on a basis different from the one relied on by the trial court.

The following additional facts are relevant to the plaintiff's claim. Prior to February, 2004, the plaintiff operated as an affiliate of Blumberg Associates, Inc., a company engaged in the insurance business in Connecticut and throughout the northeastern United States. The plaintiff had been created in 1998 for the purpose of pursuing a business opportunity as an insurance provider to Subway restaurant franchisees. During the development of this business opportunity, Blumberg Associates, Inc., used the plaintiff for a variety of other purposes, including selling insurance to customers in other states.

On or about February 1, 2004, the parent company purchased Blumberg Associates, Inc., pursuant to an asset purchase agreement. For the next two months, Blumberg Associates, Inc., continued to operate out of its business address at 433 South Main Street in West Hartford. Thereafter, the parent company transferred all of the assets it had acquired from Blumberg Associates, Inc., to 375 Willard Avenue in Newington, the business address of Brown & Brown. The insurance licensing files of the plaintiff were included among the assets physically transferred to 375 Willard Avenue.[5]

On March 19, 2004, Anne F. Pinto, an employee of Brown & Brown and former employee of Blumberg Associates, Inc., submitted, on behalf of Brown & Brown, an application for an insurance license to the insurance department of the state of Connecticut

---

[5] Brown & Brown needed the plaintiff's insurance licensing files because some of the insurance accounts that the parent company had acquired from Blumberg were written on the plaintiff's insurance licenses and it could take up to one year to have the accounts transferred to the insurance license of Brown & Brown.

(department). Along with the application, Pinto included a letter that requested that the department "change [their] records to reflect our new address" and then listed the address of 375 Willard Avenue in Newington. The letter was written on stationery with the letterhead of Blumberg Associates, Inc., and the plaintiff, and it did not identify specifically whose address should be changed on the department's records. On June 23, 2004, the department changed the address in its records for both Blumberg Associates, Inc., and the plaintiff to 375 Willard Avenue in Newington.[6]

Also in June, 2004, the plaintiff sought access to its licensing files that had been physically transferred to Brown & Brown. Brown & Brown denied having any licensing files belonging to the plaintiff. It also denied the plaintiff's request to conduct an inspection of its business office to locate the files.

In December, 2005, approximately two months prior to the expiration of the plaintiff's insurance license, the department mailed an insurance license renewal form (renewal notice) to the plaintiff at 375 Willard Avenue in Newington. According to the records of the department, the renewal notice subsequently was returned to the department as unable to forward.[7] On January 31, 2006, the plaintiff's license expired.

---

[6] According to the evidence presented, the business address of the plaintiff at this time was 30 Forest Hills Drive in West Hartford. The plaintiff was unaware that its business address had been changed on the department's records until after Brown & Brown terminated the contract.

[7] Sheila Sullivan, a representative of the department, stated that it was customary practice for the department to send a second notification, a notice of nonrenewal, to a licensee after the expiration of its insurance license. She could not say, however, whether a notice of nonrenewal had been sent to the plaintiff following the expiration of its license. She did state that if such a notification had been returned to the department, it would have been recorded in the department's log book. Sullivan stated that no such entry of return had been made in the present case.

In count one of the complaint, sounding in breach of contract, the plaintiff alleged that by failing to forward the renewal notice to the plaintiff, Brown & Brown breached the terms of paragraph ten of the party's agreement "and caused the temporary suspension of the [plaintiff's] [l]icense."[8] The plaintiff also alleged that the defendants breached the contract by terminating the agreement on grounds that did not amount to a material breach by the plaintiff or for cause as defined by the agreement, by failing to pay the plaintiff the agreed upon percentage of the commissions and fees and by failing to deliver related financial statements.

In seeking summary judgment, the defendants argued, inter alia, that the plaintiff's allegations of breach of contract failed as a matter of law because the undisputed facts established that Brown & Brown's termination of the contract, and, consequently, its refusal to continue to provide financial information and to pay commissions to the plaintiff pursuant to the contract, was done in accordance with the contract's clear and unambiguous termination clause. In addition to arguing that the plaintiff could present no evidence to support its claim that Brown & Brown had failed to forward the license renewal notice, Brown & Brown also argued that its alleged failure to forward the license renewal notice occurred many months before the parties entered into the contract, and, therefore, such action could not provide the basis for a breach of the agreement as alleged in the complaint.

In opposing the motion for summary judgment, the plaintiff claimed that there was a genuine issue of material fact as to whether the termination provision of the contract was enforceable. Specifically, the plaintiff

---

[8] Paragraph ten of the agreement provides in relevant part: "Each of the parties hereto shall . . . execute and deliver to the other parties such other instruments and documents . . . as necessary to carry out, evidence and confirm the intended purposes of this [a]greement."

argued that the court should deny summary judgment "based on the legal principle that if one prevents, hinders or obstructs the occurrence of a contractual condition, the condition is excused." The plaintiff noted that disputed questions of fact remained as to whether the defendants had changed the plaintiff's business address with the department, deprived the plaintiff of access to its files and failed to forward important mail, including the renewal notice, and whether those actions prevented or hindered the plaintiff in maintaining its insurance license.

In its memorandum of decision, the court concluded that "since [the plaintiff's] license status was a matter of public record, as a matter of law, no conduct by Brown & Brown caused [the plaintiff] not to be able to know the status of its own license." It was on the basis of that conclusion that the court rejected the plaintiff's prevention claim.

On appeal, the plaintiff claims that the court improperly decided that the plaintiff's claim of prevention of performance failed as a matter of law because the court erroneously concluded that the plaintiff was required to show that Brown & Brown's actions were the sole cause of the plaintiff's failure to maintain its license. According to the plaintiff, it was not necessary for it to show that Brown & Brown's actions had made it impossible for the plaintiff to maintain its license, and whether Brown & Brown's actions amounted to prevention so as to excuse the lapse of the plaintiff's insurance license and constitute a breach was a question of fact to be decided by a trier of fact. In the plaintiff's view, the court should have denied the motion for summary judgment because a genuine issue of material fact existed as to whether Brown & Brown's alleged actions amounted to prevention.[9]

[9] Other than its termination of the contract, the only actions of Brown & Brown that the plaintiff specifically alleged in its complaint in support of its breach of contract claim were Brown & Brown's changing of the plaintiff's

Following oral argument of the appeal, this court asked the parties sua sponte to submit simultaneous supplemental briefs addressing whether the plaintiff's claim of breach of contract based on Brown & Brown's alleged failure to forward the renewal notice failed as a matter of law because the alleged conduct occurred prior to the date upon which the parties entered into the agreement. The plaintiff argued that whether a party can prevent or hinder the occurrence of a contractual condition by conduct occurring prior to the formation of the contract is an issue of first impression that should be resolved in favor of the plaintiff. The plaintiff cited to no case law in support of its contention that actions occurring prior to the formation of a contract can support a claim under the doctrine of prevention, but rather contended that "equitable principles should ultimately govern the disposition of this case."

The doctrine of prevention is a well recognized principle of contract law. See 2 Restatement (Second), Contracts § 245 (1981); 13 S. Williston, Contracts (4th Ed. Lord 2000) § 39:3, p. 516. Under the doctrine, if a party to a contract "prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return

---

address with the department and its failure to forward the plaintiff's insurance license renewal form to the plaintiff. On appeal, however, the plaintiff also claims that there are genuine issues of material fact as to whether Brown & Brown's actions denying the plaintiff access to the plaintiff's insurance files in Brown & Brown's possession and failing to forward other notices from the department amounted to prevention. Because the plaintiff did not allege that conduct in support of its breach of contract claim, the issue of whether such conduct amounted to a prevention of performance was not properly before the trial court in its consideration of the motion for summary judgment and will not be considered by this court. See *DeCorso* v. *Calderaro*, 118 Conn. App. 617, 622, 985 A.2d 349 (2009) ("[t]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings" [internal quotation marks omitted]), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010). We limit our consideration to those facts alleged in the complaint.

promise, [that party] is not relieved of the obligation to perform, and may not legally terminate the contract for nonperformance." S. Williston, supra, § 39:3, pp. 517–18.

Both courts and commentators have noted that the doctrine of prevention is closely related to the implied covenant of good faith and fair dealing. See, e.g., *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Sup. 712, 737 n.9 (S.D.N.Y. 1989) ("[t]he implied good faith rule and prevention doctrine are kindred precepts"), citing 3A A. Corbin, Contracts (Kaufman Sup. 1989) § 654D, pp. 931–32; *M West, Inc.* v. *Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 54, 234 P.3d 833 (2010) ("prevention doctrine is substantially related to the implied covenant of good faith and fair dealing that is implicit in every contract"); 2 Restatement (Second), supra, § 245, comment (a) ("duty of good faith and fair dealing . . . may require . . . refraining from conduct that will prevent or hinder" the occurrence of condition to one's own performance); 13 S. Williston, supra, § 39:6, pp. 530–31 ("principle of prevention is based on the implied agreement of the parties to a contract to proceed in good faith and . . . to refrain from committing any willful act or omission that would interfere with the other party or prevent or make it impossible for the other party to perform"). As with the implied covenant of good faith and fair dealing, the duty imposed by the doctrine of prevention to refrain from actions that would prevent or hinder the performance of another party to the contract logically cannot exist until there is a contractual agreement between the parties.

Our Supreme Court has stated that a party cannot breach the implied covenant of good faith and fair dealing by conduct that occurred prior to the formation of the contract. *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 638, 804 A.2d 180 (2002) ("no claim for breach of the duty of good faith and fair

dealing will lie for conduct occurring prior to, or during, the formation of a contract"). Because of the close relation between the doctrine of prevention and the implied covenant of good faith and fair dealing, we see no reason not to apply the same principle to a claim of breach arising under the doctrine of prevention. Accordingly, we conclude as a matter of law that a party seeking to invoke the doctrine of prevention, a principle of contract law, may not do so based on conduct that occurred before the existence of the contract. When a party engages in wrongful acts or omissions prior to entering into a contract or in negotiating a contract, the law provides an injured party with other means for recovering damages, including tort actions based on, inter alia, fraud or unlawful interference with business relations. The plaintiff chose not to raise such claims in its complaint.

In the present case, the plaintiff's claim of prevention of performance was based solely on the allegations that the defendants improperly changed the plaintiff's address with the department and failed to forward the renewal notice, which the plaintiff claimed was in breach of the defendant's obligations under the contract. The conduct that the plaintiff claimed violates the contract, however, occurred before the parties entered into the contract. Because the parties had not yet entered into the contract at the time that Brown & Brown allegedly changed the plaintiff's address or failed to forward the renewal notice, it cannot be said that Brown & Brown's conduct violated the doctrine of prevention. The obligation not to hinder the plaintiff in its performance of its contractual obligations did not exist at the time of its alleged actions. Accordingly, we conclude that the plaintiff's claim of prevention of performance fails as a matter of law and that the court properly rendered summary judgment as to that claim.[10]

---

[10] Because we determine that Brown & Brown's actions could not, as a matter of law, support the plaintiff's claim under the doctrine of prevention,

## B

The plaintiff also claims that a genuine issue of material fact exists as to whether the defendants' conduct amounted to a waiver of their right to enforce a provision in the contract that required any waiver of a provision of the contract to be in writing.[11] In its memorandum of decision, the court declined to consider this issue on the grounds that the plaintiff had raised the issue for the first time during oral argument and had failed to cite any legal authority in support of its contention. Because the trial court properly exercised its discretion not to consider the issue, we decline to review it on appeal. See *Alexander* v. *Tyson*, 122 Conn. App. 493, 494 n.1, 999 A.2d 830 (declining to review issues "that were not considered or decided by the trial court"), cert. denied, 298 Conn. 928, 5 A.3d 488 (2010).

## II

In rendering summary judgment in favor of the defendants, the court declined to consider whether an issue of material fact existed as to whether the defendants had terminated the contract in bad faith, concluding that the complaint did not allege that the defendants had terminated the contract in bad faith and, therefore, failed to include sufficient factual allegations to state a cause of action for breach of the implied covenant of good faith and fair dealing. The plaintiff claims that the court interpreted the complaint too narrowly, arguing that the allegations in count one, sounding in breach of contract, were sufficient to state a cause of

it is unnecessary for us to address the plaintiff's claims that the court improperly placed the burden on the plaintiff to show that Brown & Brown's actions had made it impossible for the plaintiff to maintain its license.

[11] Paragraph 11 (j) of the contract provides: "This [a]greement may not be amended, or any provision waived, except by an instrument in writing signed on behalf of each of the parties."

action for breach of the implied covenant.[12] According to the plaintiff, because the implied covenant is included as a term in every contract, a claim of breach of contract necessarily encompasses a claim for breach of the implied covenant. In its view, because it alleged that Brown & Brown had breached the contract, the court should have considered whether an issue of material fact existed as to whether Brown & Brown had terminated the agreement in bad faith, thus breaching the implied covenant and, in turn, the contract. We disagree.

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather then narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal quotation marks omitted.) *Peterson* v. *Ocean Radiology Associates, P.C.*, 109 Conn. App. 275, 283, 951 A.2d 606 (2008), quoting *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559–60, 864 A.2d 1 (2005).

---

[12] Specifically, the plaintiff relies on paragraphs thirty-seven and thirty-eight of count one of the complaint, which allege: "37. The grounds cited by [the defendants] in the [l]etter as '[c]ause' for terminating the [a]greement do not constitute a material, actionable breach of the [a]greement, and [the defendants] therefore [have] breached the [a]greement.

"38. The grounds cited by [the defendants] in the [l]etter as '[c]ause' for terminating the [a]greement do not constitute '[c]ause' for termination as defined by the [a]greement, and [the defendants] therefore [have] breached the [a]greement."

Turning to the plaintiff's claim, "[i]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract . . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." (Internal quotation marks omitted.) *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 51, 19 A.3d 215 (2011), quoting *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004).

Although the covenant of good faith and fair dealing is implied in every contract, a plaintiff cannot state a claim for breach of the implied covenant simply by alleging a breach of the contract, in and of itself. See *Landry* v. *Spitz*, 102 Conn. App. 34, 43 n.6, 925 A.2d 334 (2007). Instead, to state a legally sufficient claim for breach of the implied covenant sounding in contract, the plaintiff must allege that the defendant acted in bad faith. See, e.g., id.; *Miller* v. *Guimaraes*, 78 Conn. App. 760, 773, 829 A.2d 422 (2003). If the plaintiff fails to set forth factual allegations that the defendant acted in bad faith, a claim for breach of the implied covenant will not lie. See *Keller* v. *Beckenstein*, 117 Conn. App. 550, 564–65, 979 A.2d 1055 (plaintiffs failed to allege claim for breach of implied covenant of good faith and fair dealing where complaint did not set forth factual allegations of fraud, misrepresentation or improper motive on part of defendants), cert. denied, 294 Conn. 913, 983 A.2d 274 (2009); *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 719–21, 807 A.2d 968 (counterclaim for breach of implied covenant of good faith and fair dealing legally insufficient where defendants failed to allege factual

allegations of bad faith), cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). Therefore, the plaintiff's argument that an allegation of breach of contract, in and of itself, is sufficient to state a claim for breach of the implied covenant is without merit.

We now consider whether count one of the complaint alleged sufficient factual allegations of bad faith to state a claim for breach of the implied covenant.[13] "Bad faith has been defined in our jurisprudence in various ways. Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose. . . . [B]ad faith may be overt or may consist of inaction, and it may include evasion of the spirit of the bargain . . . ." (Citation omitted; internal quotation marks omitted.) *Landry* v. *Spitz*, supra, 102 Conn. App. 42–43.

Pursuant to our plenary review of the complaint, we conclude that count one of the complaint failed to allege factual allegations of bad faith. Count one of the complaint, entitled "Breach of Contract As Against Brown & Brown of Connecticut, Inc.," alleges, inter alia, that Brown & Brown breached the agreement by: (1) terminating the agreement based on grounds that did "not constitute a material, actionable breach of the [a]greement"; and (2) terminating the agreement without " '[c]ause' for termination as defined by the [a]greement . . . ." The plaintiff, however, failed to set forth *any* factual allegations that Brown & Brown, in terminating the agreement, committed a fraud, sought

---

[13] In its brief, the plaintiff arguably raises an alternative claim that count one contained sufficient factual allegations of bad faith, notwithstanding its failure to use the words "bad faith."

to mislead or deceive the plaintiff, acted with an improper motive, or did so with a dishonest purpose. See *Rafalko* v. *University of New Haven*, supra, 129 Conn. App. 51. Thus, count one is totally devoid of *any* factual allegation that Brown & Brown acted in *bad faith* in terminating the agreement.

For those reasons, we conclude that the court properly declined to consider whether an issue of material fact existed as to whether the defendants had terminated the agreement in bad faith. See *DeCorso* v. *Calderaro*, 118 Conn. App. 617, 622, 985 A.2d 349 (2009) ("[t]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings" [internal quotation marks omitted]), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010).

### III

Finally, the plaintiff claims that the court abused its discretion in refusing to allow the plaintiff to amend its complaint after the defendants' motion for summary judgment had been granted. "A trial court has wide discretion in granting or denying amendments to the pleadings. . . . The trial court's refusal to allow a belated amendment to a pleading in response to the filing of a motion for summary judgment by the adverse party will be sustained unless there is clear evidence of an abuse of discretion. . . . Where, as here, the motion was filed after the court had already ruled in favor of the defendant[s] on [their] summary judgment motion, its action was clearly justified." (Citations omitted; internal quotation marks omitted.) *Collum* v. *Chapin*, 40 Conn. App. 449, 453–54, 671 A.2d 1329 (1996); see also *Shuster* v. *Buckley*, 5 Conn. App. 473, 479, 500 A.2d 240 (1985). Therefore, we conclude that the trial court did not abuse its discretion in denying

the plaintiff's motion to open the judgment to amend the complaint.

The judgment is affirmed.

In this opinion the other judges concurred.