******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ELOY CRUZ *v.* JON L. SCHOENHORN ET AL.
(AC 40510)

DiPentima, C. J., and Moll and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages for legal malpractice from the defendant attorneys, J and A, who represented him in a prior civil action in which he alleged that he had sustained severe injuries after being attacked at a rap music concert. The plaintiff claimed the defendants failed to effectuate proper service of process on two of the defendants in the prior civil action. The trial court granted the defendants' motions for summary judgment, concluding that the plaintiff's action was not brought within the applicable statute of limitations (§ 52-577), and rendered judgments thereon, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly rendered summary judgment in favor of J: the plaintiff did not submit any affidavits or documentary evidence in support of his objection to J's motion, and there was no merit to the plaintiff's claim that the trial court, in adjudicating J's motion for summary judgment, improperly failed to consider the plaintiff's affidavit, which had been filed in support of the plaintiff's opposition to A's motion for summary judgment, as that affidavit was not properly before the court with respect to J's motion for summary judgment, on which the court heard argument nearly two months before the plaintiff filed the affidavit, and, thus, the court could not have considered the affidavit in adjudicating J's motion for summary judgment; moreover, the court did not misconstrue the plaintiff's argument in opposing J's motion for summary judgment, as the plaintiff at no time argued to the trial court that his attorney-client relationship with J ended in 2012, the plaintiff did not submit any evidence to support his assertion of the applicability of the continuous representation doctrine, and, therefore, the court properly concluded that a de facto termination of the plaintiff's attorney-client relationship with J occurred on August 26, 2009, when the plaintiff filed an appearance as a self-represented party in the civil action, that the limitations period ran on August 26, 2012, and that this legal malpractice action, commenced in December, 2014, was therefore filed outside of the limitations period.

2. The trial court properly granted A's motion for summary judgment: the plaintiff's affidavit in opposition to A's motion for summary judgment did not set forth any specific facts or evidence to support his conclusory statement that his attorney-client relationship with A ended in September, 2012, nor did the affidavit contradict A's documentary evidence demonstrating, inter alia, that the plaintiff had filed grievance complaints against him in 2006 and 2010 and had filed an appearance on his own behalf in the prior civil action on August 26, 2009, by which point the plaintiff had lost confidence in A and was no longer seeking his legal advice; moreover, the court did not misconstrue the plaintiff's argument in opposition to A's motion for summary judgment, because contrary to the plaintiff's assertion, the court did not make any statement identifying the date on which the plaintiff argued that his attorney-client relationship with A ended, and the court having determined that there was no issue of fact that the latest possible date on which a de facto termination of the plaintiff's attorney-client relationship with A occurred on August 26, 2009, this legal malpractice action, commenced in December, 2014, was time barred pursuant to § 52-577.

Argued November 29, 2018—officially released March 5, 2019

*Procedural History*

Action to recover damages for legal malpractice, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Elgo, J.*, granted the defendants' motions for summary judgment

and rendered judgments thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*Elizabeth M. Cristofaro*, with whom, on the brief, was *Kelvin L. Thomas*, for the appellee (defendant Jon L. Schoenhorn).

*Louis B. Blumenfeld*, with whom, on the brief, was *Lorinda S. Coon*, for the appellee (defendant Arnaldo J. Sierra).

*Opinion*

MOLL, J. The plaintiff, Eloy Cruz, appeals from the summary judgments rendered by the trial court in favor of the defendants, Jon L. Schoenhorn and Arnaldo J. Sierra, respectively.[1] On appeal, the plaintiff asserts that the trial court erroneously concluded that his legal malpractice claims against the defendants were time barred pursuant to General Statutes § 52-577,[2] the statute of limitations applicable to tort actions, because genuine issues of material fact exist as to whether the continuous representation doctrine applies so as to toll § 52-577. We disagree and, accordingly, affirm the summary judgments of the trial court.[3]

The following facts and procedural history are relevant to our resolution of the plaintiff's claims. The defendants represented the plaintiff in a civil action commenced in 2003 in which the plaintiff alleged that he had sustained severe injuries after being attacked by several individuals at a rap music concert in 2001. See *Cruz* v. *Continental Corp.*, Superior Court, judicial district of Hartford, Docket No. CV-03-0824221-S (Continental action). Two of the defendants in the Continental action, Jayson Phillips and David Styles, were nonresident individuals upon whom service of process purportedly had been made in April, 2004, pursuant to General Statutes § 52-59b. Phillips and Styles subsequently were defaulted for failure to appear. On November 2, 2005, following a hearing in damages, the trial court rendered judgment against Phillips and Styles in the amount of $779,378.22.[4] In 2006, Schoenhorn made unsuccessful attempts to collect upon the judgment. Dissatisfied with the postjudgment collection efforts, the plaintiff filed grievance complaints against Schoenhorn in 2006 and in 2008, both of which were dismissed. In addition, in 2006 and in 2010, the plaintiff filed grievance complaints against Sierra, both of which were dismissed.

On August 26, 2009, the plaintiff filed an appearance as a self-represented party in the Continental action. The plaintiff's appearance form did not signify whether he was appearing in lieu of or in addition to the defendants. On October 20, 2009, the plaintiff, representing himself, filed an application for a waiver of fees and a motion to "reopen case and force execution of existing judgment" against Phillips and Styles. On November 5, 2009, the court denied the plaintiff's motion as untimely.

There was no additional activity in the Continental action until September 17, 2012, when the law firm of Minnella, Tramuta, and Edwards, LLC, appeared on behalf of the plaintiff, according to the appearance form, in lieu of the plaintiff and the defendants. On October 16, 2012, the plaintiff filed a motion seeking postjudgment interest in the amount of $733,735.29, which the court granted on November 13, 2012. On

November 27, 2012, Phillips filed a motion to open and set aside the judgment, asserting that the court lacked personal jurisdiction over him as a result of insufficient service of process. On December 18, 2012, the court granted Phillips' motion.

On January 18, 2013, Phillips filed a motion to dismiss for lack of personal jurisdiction as a result of insufficient service of process. On February 7, 2013, Styles filed a motion to dismiss on the same ground. On May 14, 2013, absent objection, the court granted the respective motions to dismiss filed by Phillips and Styles.

On July 11, 2013, the plaintiff filed an appearance as a self-represented party in lieu of Minnella, Tramuta, and Edwards, LLC, in the Continental action and filed a motion to open the judgment, to which Phillips and Styles filed a joint objection. On July 29, 2013, the court denied the plaintiff's motion to open. After July, 2013, there was no activity in the Continental action.

On December 15, 2014, the plaintiff, representing himself, commenced the present action against the defendants. In his operative one count complaint filed on August 24, 2015, the plaintiff asserted a legal malpractice claim against the defendants, alleging that the defendants had failed to effectuate proper service of process on Phillips and Styles in the Continental action. The defendants filed separate answers and special defenses, including statute of limitations defenses pursuant to § 52-577. The plaintiff moved to strike, inter alia, the defendants' statute of limitations defenses, which the trial court denied. Thereafter, the plaintiff did not file a reply pleading to each of the defendants' special defenses.[5]

On July 12, 2016, Schoenhorn filed a motion for summary judgment, accompanied by a memorandum of law and exhibits, asserting that he was entitled to judgment as a matter of law because, among other things, the plaintiff's claim against him was time barred pursuant to § 52-577. On August 31, 2016, the plaintiff filed an objection to Schoenhorn's motion for summary judgment, accompanied by a memorandum of law, relying solely on the allegations of the plaintiff's operative complaint.[6] The plaintiff did not submit an affidavit or other documentary evidence in support of his objection to Schoenhorn's motion for summary judgment. On September 14, 2016, Schoenhorn filed a reply memorandum of law. On September 19, 2016, the court heard argument on Schoenhorn's motion for summary judgment.

On September 9, 2016, Sierra filed a motion for summary judgment, accompanied by a memorandum of law and exhibits, arguing that he was entitled to judgment as a matter of law because, among other things, the plaintiff's claim against him was time barred pursuant to § 52-577. On November 9, 2016, the plaintiff filed a memorandum of law in opposition to Sierra's motion

for summary judgment, as well as an affidavit signed by the plaintiff (November 9, 2016 affidavit).[7] On November 23, 2016, Sierra filed a reply memorandum of law accompanied by exhibits. On December 5, 2016, the court heard argument on Sierra's motion for summary judgment.

On April 24, 2017, the court issued a memorandum of decision granting Schoenhorn's motion for summary judgment, concluding that the plaintiff's claim against Schoenhorn was time barred pursuant to § 52-577.[8] On May 23, 2017, the court issued a separate memorandum of decision granting Sierra's motion for summary judgment, concluding that the plaintiff's claim against Sierra also was time barred pursuant to § 52-577.[9] This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the relevant standard of review and legal principles that govern our review of the plaintiff's claims. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Perez* v. *Metropolitan District Commission*, 186 Conn. App. 466, 471–72, A.3d (2018).

"Summary judgment may be granted where the claim is barred by the statute of limitations." (Internal quotation marks omitted.) *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 134 Conn. App. 785, 789, 41 A.3d 674 (2012), aff'd, 311 Conn. 282, 87 A.3d 534 (2014). "Actions for legal malpractice based on negligence are subject to § 52-577, the tort statute of limitations." (Internal quotation marks omitted.) *Weiner* v. *Clinton*, 106 Conn. App. 379, 386, 942 A.2d 469 (2008). "This court has determined that [§] 52-577 is an occur-

rence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . Moreover, our Supreme Court has stated that [i]n construing our general tort statute of limitations . . . § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) *Chamerda* v. *Opie*, 185 Conn. App. 627, 652, 197 A.3d 982, cert. denied, 330 Conn. 953, 197 A.3d 893 (2018).

"To alleviate the harsh consequences of the occurrence rule, our Supreme Court . . . adopted the continuous representation doctrine in *DeLeo* v. *Nusbaum*, 263 Conn. 588, 821 A.2d 744 (2003). Under that rule, a plaintiff may invoke the doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; *and* (2) either that the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Emphasis in original; internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, 85 Conn. App. 145, 150, 856 A.2d 518 (2004). "With regard to the first prong . . . the representation continues for the purposes of the continuous representation doctrine until either the formal or the de facto termination of the attorney-client relationship. The formal termination of the relationship occurs when the attorney is discharged by the client, the matter for which the attorney was hired comes to a conclusion, or a court grants the attorney's motion to withdraw from the representation. A de facto termination occurs if the client takes a step that unequivocally indicates that he has ceased relying on his attorney's professional judgment in protecting his legal interests, such as hiring a second attorney to consider a possible malpractice claim or filing a grievance against the attorney. Once such a step has been taken, representation may not be said to continue for purposes of the continuous representation doctrine. A client who has taken such a concrete step may not invoke this doctrine, because such actions clearly indicate that the client no longer is relying on his attorney's professional judgment but instead intentionally has adopted a clearly adversarial relationship toward the attorney. Thus, once such a step has been taken, representation does not continue for purposes of the continuous representation doctrine." (Footnotes omitted.)

*DeLeo* v. *Nusbaum*, supra, 597–98.

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Internal quotation marks omitted.) *Chamerda* v. *Opie*, supra, 185 Conn. App. 653.

On appeal, the plaintiff asserts that because there are genuine issues of material fact as to whether the continuous representation doctrine applies so as to toll § 52-577, the court erred in rendering summary judgments in favor of the defendants on the ground that his claims were time barred. More specifically, the plaintiff contends that there are genuine issues of material fact with respect to the date upon which his attorney-client relationships with the defendants terminated and that the court (1) failed to consider the November 9, 2016 affidavit or, alternatively, improperly weighed the evidence submitted by the parties, and (2) misconstrued the arguments that he presented in opposition to the defendants' motions for summary judgment.[10] We disagree.

I

We first turn to the plaintiff's claims relating to the summary judgment rendered in favor of Schoenhorn.[11] For the reasons that follow, we reject these claims.

The following additional facts and procedural history are relevant to our resolution of these claims. In moving for summary judgment on the ground that the plaintiff's claim against him was time barred pursuant to § 52-577, Schoenhorn asserted that any available tolling of the statute of limitations pursuant to the continuous representation doctrine ended on August 26, 2009, when there was a de facto termination of his attorney-client relationship with the plaintiff. In support of his motion for summary judgment, Schoenhorn submitted, inter alia, an affidavit based on his own personal knowledge and a copy of the transcript of the plaintiff's deposition taken in the present case, which demonstrated that the plaintiff filed a self-represented party appearance in the Continental action on August 26, 2009, and that, by that time, the plaintiff was no longer speaking with Schoenhorn and no longer had confidence in him. Schoenhorn contended that the plaintiff commenced the present case on December 15, 2014, over two years after the three year statute of limitations had expired on August 26, 2012.

The plaintiff argued, through counsel, in opposition

to Schoenhorn's motion for summary judgment, that there was a genuine issue of material fact as to the date upon which his attorney-client relationship with Schoenhorn ended. Specifically, he argued, without citation to any evidence in the record, that Schoenhorn "continued to represent [him] after the filing of the grievances in both 2006 and 2008 and continued to represent [him] for some time after 2008 and into 2009" and that he had commenced the present case within two years after he had "learned of [Schoenhorn's] negligence on December 18, 2012," when the trial court granted Phillips' motion to open and set aside the judgment in the Continental action. The plaintiff did not submit any affidavits or other documentary evidence in support of his objection to Schoenhorn's motion.

In its memorandum of decision granting Schoenhorn's motion for summary judgment, the trial court summarized the plaintiff's argument to be that the continuous representation doctrine served to toll the statute of limitations "because [the plaintiff] did not know of the defendant's wrongful conduct until December 18, 2012, and because Schoenhorn continued to represent the plaintiff until sometime into 2009." The court found that the plaintiff's reasoning was "unclear and, in any event, unpersuasive." The court observed that § 52-577 is an occurrence statute, such that the limitations period begins when the act or omission complained of occurs, not when the plaintiff first discovers an injury. Thus, the court concluded, the limitations period expired in April, 2007, three years following Schoenhorn's alleged negligent conduct in April, 2004. The court additionally concluded: "Even if, however, the plaintiff could argue that the defendant still represented him through August 26, 2009, thereby tolling [§ 52-577] until that date, the plaintiff would have been required to file this action by August 26, 2012. Instead, the plaintiff here commenced the action on December 15, 2014 . . . . Because the plaintiff failed to timely file his action, this court concludes that the action is barred by § 52-577 . . . ."

The plaintiff claims that the court, in granting Schoenhorn's motion for summary judgment, failed to consider the November 9, 2016 affidavit, in which he averred that the defendants continued to represent him until September 17, 2012. This claim is without merit. The November 9, 2016 affidavit was not properly before the court with respect to Schoenhorn's motion for summary judgment. Practice Book (2016) § 17-45 provides in relevant part: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits . . . . The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the judicial authority otherwise directs. . . . *Any adverse party shall at least five days before the date the motion is*

*to be considered on the short calendar file opposing affidavits and other available documentary evidence.*" (Emphasis added.) The court heard argument on Schoenhorn's motion for summary judgment on September 19, 2016, nearly two months before the plaintiff had filed the November 9, 2016 affidavit. In fact, during such argument, the plaintiff's counsel expressed to the court his intention to rely on the plaintiff's brief and contended that Schoenhorn had not satisfied his initial burden of proof. Moreover, the November 9, 2016 affidavit was filed on the same day the plaintiff filed his memorandum in opposition to Sierra's motion for summary judgment. Simply put, the plaintiff's suggestion that the November 9, 2016 affidavit was filed in opposition to Schoenhorn's motion for summary judgment was first made on appeal. Under these circumstances, the court could not have considered the November 9, 2016 affidavit in adjudicating Schoenhorn's motion for summary judgment. See, e.g., *Magee Avenue, LLC* v. *Lima Ceramic Tile, LLC*, 183 Conn. App. 575, 583–85, 193 A.3d 700 (2018) (concluding that trial court erroneously rendered summary judgment where, among other things, court improperly considered untimely affidavit filed by movant in support of motion for summary judgment). Thus, the plaintiff's claim fails.[12]

The plaintiff also claims that the court misconstrued the argument that he presented in opposing Schoenhorn's motion for summary judgment. Specifically, he contends that he argued to the trial court that his attorney-client relationship with Schoenhorn ended on September 17, 2012, whereas the court interpreted his argument to be that his attorney-client relationship with Schoenhorn ended sometime in 2009. We disagree. In his memorandum of law opposing Schoenhorn's motion for summary judgment, the plaintiff explicitly asserted that Schoenhorn "continued to represent [him] after the filing of the grievances in both 2006 and 2008 and continued to represent [him] for some time after 2008 and into 2009." Nowhere in his objection or accompanying memorandum of law did the plaintiff contend that his attorney-client relationship with Schoenhorn ended on September 17, 2012. In addition, during argument on Schoenhorn's motion for summary judgment, the plaintiff did not argue that the representation ended on September 17, 2012, or on any other specific date.[13] In any event, the plaintiff did not submit any evidence at all to support his assertion of the continuous representation doctrine. See *Chamerda* v. *Opie*, supra, 185 Conn. App. 653 ("[w]hen the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute" [internal quotation marks omitted]). Accordingly, the plaintiff's claim fails.[14]

In light of the foregoing, with respect to Schoenhorn's

motion for summary judgment, we conclude that no genuine issue of material fact exists that a de facto termination of the plaintiff's attorney-client relationship with Schoenhorn occurred on August 26, 2009, thereby tolling § 52-577 to that date pursuant to the continuous representation doctrine.[15] Thus, the limitations period ran on August 26, 2012. The plaintiff commenced the present action on December 15, 2014, outside of the limitations period. Accordingly, as a matter of law, the plaintiff's legal malpractice claim against Schoenhorn is time barred pursuant to § 52-577, and, thus, the court properly rendered summary judgment in favor of Schoenhorn.

## II

We next address the plaintiff's claims relating to the summary judgment rendered in favor of Sierra. For the reasons that follow, we conclude that these claims are unavailing.

The following additional facts and procedural history are relevant to our resolution of these claims. In moving for summary judgment on the ground that the plaintiff's claim against him was time barred pursuant to § 52-577, Sierra asserted that, pursuant to the continuous representation doctrine, there were three possible dates upon which a de facto termination of his attorney-client relationship with the plaintiff occurred: (1) September 19, 2006, when the plaintiff filed his first grievance complaint against Sierra, thereby causing the limitations period to expire on September 19, 2009; (2) August 26, 2009, when the plaintiff filed his first appearance as a self-represented party in the Continental action, thereby causing the limitations period to expire on August 26, 2012; and (3) July 10, 2010, when the plaintiff filed his second grievance complaint against Sierra, thereby causing the limitations period to expire on July 10, 2013. In support of his motion for summary judgment, Sierra submitted, inter alia, an affidavit based on his own personal knowledge and excerpts of the transcript of the plaintiff's deposition, upon which he relied to demonstrate that the plaintiff's grievance complaints against him had been filed and dismissed and that the plaintiff, having lost confidence in him, appeared as a self-represented party in the Continental action on August 26, 2009, after which the plaintiff sought no additional legal services from him. Sierra contended that because the plaintiff commenced the present action on December 15, 2014, beyond all three of the possible expiration dates of the limitations period set forth in § 52-577, the plaintiff's claim was time barred.

The plaintiff argued in opposition to Sierra's motion for summary judgment that there was a genuine issue of material fact as to the date upon which his attorney-client relationship with Sierra ended. Specifically, he argued that Sierra's representation of him terminated on September 17, 2012, when the law firm of Minnella,

Tramuta, and Edwards, LLC, appeared on his behalf in the Continental action, and that he had been unaware of Sierra's alleged negligent conduct until the trial court granted Phillips' motion to open and set aside the judgment in the Continental action on December 18, 2012.

In the November 9, 2016 affidavit, filed in opposition to Sierra's motion for summary judgment, the plaintiff averred in relevant part that "[Sierra] and [Schoenhorn] continued to represent [him] until [he] retained new counsel on September 17, 2012."

In its memorandum of decision granting Sierra's motion for summary judgment, the trial court summarized the plaintiff's argument as follows: "The plaintiff asserts that . . . Sierra served the wrong defendants [in the Continental action] which would mean that [Sierra's] allegedly negligent conduct occurred in April, 2004. . . . [T]he plaintiff does not dispute that he filed his own appearance in August 26, 2009, no longer had contact with counsel, had filed grievances against Sierra . . . and testified that he had lost confidence in [the defendants]. Instead, the plaintiff argues that the continuous representation doctrine tolls [§ 52-577] because he did not know of [Sierra's] wrongful conduct until December 18, 2012." The court found that the plaintiff's reasoning was "unclear and, in any event, unpersuasive." The court concluded that § 52-577 is an occurrence statute such that the limitations period begins when the act or omission complained of occurs, not when the plaintiff first discovers the injury, and, thus, the statute of limitations expired in April, 2007, three years following Sierra's alleged improper service of process on Phillips and Styles in April, 2004. The court further concluded: "Even if, however, the plaintiff could argue that [Sierra] still represented him through August 26, 2009, thereby tolling [§ 52-577] until that date, the plaintiff would have been required to file this action by August 26, 2012. Given the grievances filed, the undisputed evidence that he lost confidence in Sierra and did not have contact with Sierra after August 26, 2009, the court cannot find that the doctrine of continuous representation applies to toll the statute. The plaintiff here commenced the action on December 15, 2014 . . . . Because the plaintiff failed to timely file his action, this court concludes that the action is barred by § 52-577 . . . ."

The plaintiff claims that the court, in rendering summary judgment in favor of Sierra, failed to consider the November 9, 2016 affidavit or, alternatively, if it considered the November 9, 2016 affidavit, the court erroneously weighed the evidence submitted by the parties. We are not persuaded. The November 9, 2016 affidavit did not set forth any specific facts or evidence to support the plaintiff's conclusory statement that his attorney-client relationship with Sierra terminated on September 17, 2012, after he had retained new counsel,

nor did the November 9, 2016 affidavit contradict Sierra's documentary evidence demonstrating, inter alia, that the plaintiff had filed grievance complaints against him in 2006 and 2010 and had filed an appearance on his own behalf in the Continental action on August 26, 2009, by which point he had lost confidence in Sierra and was no longer seeking legal advice from Sierra. See *Horvath* v. *Hartford*, 178 Conn. App. 504, 509, 176 A.3d 592 (2017) ("[a] conclusory assertion . . . does not constitute evidence sufficient to establish the existence of a disputed material fact for purposes of a motion for summary judgment" [internal quotation marks omitted]). The November 9, 2016 affidavit was inadequate to create a genuine issue of material fact regarding the termination date of the plaintiff's attorney-client relationship with Sierra and, therefore, we reject the plaintiff's claims. Cf. *Busque* v. *Oakwood Farms Sports Center, Inc.*, 80 Conn. App. 603, 606–608, 836 A.2d 463 (2003) (reversing summary judgment where plaintiff's affidavit filed in opposition to defendant's motion for summary judgment, which plaintiff claimed trial court had failed to consider in rendering summary judgment in favor of defendant, created genuine issues of material fact), cert. denied, 267 Conn. 919, 841 A.2d 1190 (2004).

The plaintiff also claims that the court misconstrued the argument that he presented in opposing Sierra's motion for summary judgment. Specifically, he contends that he argued to the trial court that his attorney-client relationship with Sierra ended on September 17, 2012, whereas the court interpreted his argument to be that his attorney-client relationship with Sierra ended in August, 2009. Contrary to the plaintiff's assertion, however, the court did not make any statement identifying the date upon which the plaintiff argued that his attorney-client relationship with Sierra ended.[16] Rather, the court determined that, in light of the grievance complaints filed by the plaintiff against Sierra and the undisputed evidence demonstrating that the plaintiff had filed an appearance on his own behalf in the Continental action on August 26, 2009, by which point he had lost confidence in Sierra and was no longer in contact with Sierra, there was no genuine issue of material fact that the latest possible date upon which a de facto termination of the plaintiff's attorney-client relationship with Sierra occurred, and thus the latest possible date to which § 52-577 could have been tolled, was August 26, 2009. Therefore, the plaintiff's claim fails.

Accordingly, with respect to Sierra's motion for summary judgment, we conclude that no genuine issue of material fact exists that a de facto termination of the plaintiff's attorney-client relationship with Sierra occurred no later than August 26, 2009, thereby tolling the limitations period set forth in § 52-577 to that date, at the latest, pursuant to the continuous representation doctrine.[17] Thus, the limitations period ran no later than August 26, 2012. The plaintiff commenced the present

action on December 15, 2014, outside of the limitations period. As a matter of law, the plaintiff's legal malpractice claim against Sierra is time barred pursuant to § 52-577, and, thus, the court properly rendered summary judgment in favor of Sierra.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] For purposes of clarity, we refer to Jon L. Schoenhorn and Arnaldo J. Sierra collectively as the defendants, and individually by last name.

[2] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[3] Because we conclude that the court properly rendered summary judgments in favor of the defendants on the ground that the plaintiff's legal malpractice claims against them were time barred pursuant to § 52-577, we need not reach the alternative grounds for affirmance raised by the defendants in their appellate briefs.

[4] The plaintiff settled with the other defendants in the Continental action prior to trial.

[5] The defendants do not raise any claim on appeal predicated on the plaintiff's failure to reply to their special defenses and, therefore, we do not address this pleading deficiency. See Practice Book §§ 10-56 and 10-57; see also *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 700 n.7, 145 A.3d 292 (observing that, although continuous representation doctrine, like continuing course of conduct doctrine, is matter that must be pleaded in avoidance of statute of limitations special defense pursuant to Practice Book § 10-57, defendants did not claim prejudice resulting from plaintiffs' lapse in pleading), cert. denied, 323 Conn. 930, 150 A.3d 231 (2016).

[6] On August 5, 2016, the law firm of Votre & Associates, P.C., filed an appearance on behalf of the plaintiff, in addition to the plaintiff's self-represented party appearance. The plaintiff acted solely via counsel throughout the remainder of the trial court proceedings.

[7] The November 9, 2016 affidavit did not identify the memorandum in opposition that it was supporting.

[8] In his motion for summary judgment, Schoenhorn also argued that his alleged negligent conduct did not cause the damages claimed by the plaintiff. After concluding that the plaintiff's legal malpractice claim against Schoenhorn was time barred pursuant to § 52-577, the court, in a footnote, stated that "it is not clear how the plaintiff can causally link [Schoenhorn's] alleged misconduct with the ultimate dismissal of [the] plaintiff's attempt to enforce the judgment. Because the statute of limitations bar definitively decides the outcome, however, this court does not elaborate further as to this claim."

[9] In his motion for summary judgment, Sierra also argued that his alleged negligent conduct did not cause the damages claimed by the plaintiff and that he had no duty to effectuate service on Phillips and Styles in the Continental action. After concluding that the plaintiff's legal malpractice claim against Sierra was time barred pursuant to § 52-577, the court, in a footnote, stated that "it is not clear how the plaintiff can causally link [Sierra's] alleged misconduct with the ultimate dismissal of [the] plaintiff's attempt to enforce the judgment. Because the statute of limitations bar definitively decides the outcome, however, this court does not elaborate further as to this claim." The court also did not address the merits of Sierra's claim that he had no duty to effectuate service on Phillips and Styles in the Continental action.

[10] The plaintiff also claims that, as a matter of public policy, the Rules of Professional Conduct provide that an attorney should clarify any doubt regarding the existence of an attorney-client relationship with a client and should confirm the termination of an attorney-client relationship by way of a written statement sent to the client. See Rules of Professional Conduct 1.3, commentary ("Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. . . . Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so."); Rules of Professional Conduct 1.16, commentary ("A written statement to the client confirming the termination of the relationship and the basis of the termination reduces the possibil-

ity of misunderstanding the status of the relationship. The written statement should be sent to the client before or within a reasonable time after the termination of the relationship.").

The plaintiff asserts that the Rules of Professional Conduct support his contention that his attorney-client relationships with the defendants terminated on September 17, 2012, and, thus, that genuine issues of material fact exist as to the date of the termination of the attorney-client relationships. The plaintiff's reliance on the Rules of Professional Conduct, to which he refers for the first time on appeal, is misplaced. Our Supreme Court explained in *DeLeo* that "the representation continues for the purposes of the continuous representation doctrine until either the formal *or* the de facto termination of the attorney-client relationship." (Emphasis added.) *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597. As we conclude subsequently in this opinion, there are no genuine issues of material fact that de facto terminations of the plaintiff's attorney-client relationships with the defendants occurred on or by August 26, 2009. Whether the defendants failed to clarify their attorney-client relationships with the plaintiff or to confirm the termination of their attorney-client relationships with the plaintiff in writing does not alter our analysis.

[11] In his appellate brief, the plaintiff does not segregate his claims directed to the summary judgment rendered in favor of Schoenhorn from his claims directed to the summary judgment rendered in favor of Sierra. For ease of discussion, we address the plaintiff's claims challenging each judgment separately.

[12] As a result of our conclusion that the November 9, 2016 affidavit was not properly before the court with regard to Schoenhorn's motion for summary judgment, we need not reach the plaintiff's alternative claim that the court erroneously weighed the evidence submitted by the parties in adjudicating Schoenhorn's motion for summary judgment.

[13] In his appellate brief, to support his contention that the court misconstrued his argument with respect to Schoenhorn's motion for summary judgment, the plaintiff cites to his memorandum of law in opposition to Sierra's motion for summary judgment and the transcript of the argument on that motion. In his opposition to Sierra's motion for summary judgment and during argument on that motion, the plaintiff expressly argued that his attorney-client relationship with Sierra ended on September 17, 2012. Before this court the plaintiff conflates the defendants' distinct motions for summary judgment, which, although involving similar claims, were briefed, argued, and decided separately.

[14] The plaintiff also refers to the November 9, 2016 affidavit in an effort to demonstrate that he had argued to the court that his attorney-client relationship with Schoenhorn terminated on September 17, 2012. As we concluded previously in this opinion, however, the November 9, 2016 affidavit was not properly before the court with respect to Schoenhorn's motion for summary judgment.

[15] In moving for summary judgment, Schoenhorn did not argue that the plaintiff's filing of the first grievance complaint against him in 2006 constituted a de facto termination of the plaintiff's attorney-client relationship with him. See *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597–98 (client's filing of grievance complaint against attorney constitutes de facto termination of attorney-client relationship). Accordingly, we do not address whether the plaintiff's filing of the first grievance complaint against Schoenhorn in 2006 was a de facto termination of their attorney-client relationship.

[16] The plaintiff again conflates the court's decision granting Sierra's motion for summary judgment with the court's separate decision granting Schoenhorn's motion for summary judgment.

[17] Unlike Schoenhorn, Sierra argued in moving for summary judgment that the plaintiff's filing of the first grievance complaint against him on September 19, 2006, constituted a de facto termination of the plaintiff's attorney-client relationship with him. Pursuant to *DeLeo*, a de facto termination of Sierra's attorney-client relationship with the plaintiff occurred when the plaintiff filed the first grievance complaint against Sierra. See *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597–98. Thus, with respect to the plaintiff's claim against Sierra, the limitations period set forth in § 52-577 was tolled only until September 19, 2006, and thereafter expired on September 19, 2009. Regardless of whether we rely on the de facto termination that occurred upon the filing of the plaintiff's first grievance complaint against Sierra on September 19, 2006, or on the de facto termination that occurred upon the plaintiff filing his first appearance as a self-represented party in the Continental action on August 26, 2009, which is the date upon which the court focused

in its memorandum of decision, the plaintiff's claim against Sierra is time barred pursuant to § 52-577.

———————————————